## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **HARLAN EUGENE WEAVER,** | ) | |
| **Plaintiff,** | ) | **Case No. _____** |
| | ) | |
| **v.** | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| **KANSAS STATE UNIVERSITY,** | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Harlan Eugene Weaver, by and through his undersigned counsel, Bruce Alan Brumley and Chloe Elizabeth Davis, and for his causes of action against Defendant, Kansas State University, states the following:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Harlan Eugene Weaver (hereinafter "Plaintiff") is an individual residing in Douglas County, Kansas.

2.     Defendant Kansas State University (hereinafter the "University" or "Defendant") is a public university organized and existing under the laws of the State of Kansas, governed by the Kansas Board of Regents, and duly operating in and by virtue of the laws of the State of Kansas and may be served with process pursuant to statutory requirements in Riley County, Kansas.

3.     This action arises under Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination related to various sections including employment, discrimination, retaliation, harassment, attorney's fees, injunctive relief, and compensatory damages.

4.     As to the claims enumerated herein that arise under federal law, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

5.     As to the claims enumerated herein that arise under state law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the claims enumerated herein that arise under state

1

law are so related to claims herein that arise under federal law that they form part of the same case or controversy.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendant is subject to the Court's personal jurisdiction within this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.    Plaintiff incorporates by reference all aforementioned paragraphs 1 through 6 as if fully set forth herein.

8.    Plaintiff dually filed separate Charges of Discrimination with the Kansas Human Rights Commission (hereinafter "KHRC") against the Defendant on or about April 2, 2024. The complaints were dual filed with the Equal Employment Opportunity Commission (hereinafter "EEOC").

9.    Plaintiff was issued his Notice of Right to Sue letter dated January 28, 2025, by the United States Equal Employment Opportunity Commission on or about February 3, 2025.

10.    Plaintiff's claims herein were subject to the KHRC/EEOC investigation referenced above.

11.    Plaintiff has exhausted his administrative remedies pursuant to 29 C.F.R. §1601, *et. seq.* and K.S.A. §44-2005, *et. seq.*, or any other rule, law, statute, or regulation.

12.    Plaintiff has fully complied with any and all administrative and jurisdictional prerequisites to the institution of this action in this Court.

## ALLEGATIONS COMMON TO ALL COUNTS

13.    Plaintiff incorporates by reference all aforementioned paragraphs 1 through 12 as if fully set forth herein.

14.    Plaintiff was assigned the female gender at birth. However, at all times pled herein, Plaintiff identified and presented as a male.

2

15.     Plaintiff was hired by the University as an Associate Professor within the University's Gender, Women, and Sexuality Studies Department in August 2015.

16.     In March 2022, Plaintiff was scheduled to undergo a hysterectomy, which required a post-surgery recovery period of approximately six to eight weeks.

17.     Plaintiff made arrangements with the proper University staff to ensure that Plaintiff's duties and responsibilities were addressed while Plaintiff was off work for the six-to-eight-week recovery period following the hysterectomy.

18.     However, shortly after Plaintiff's hysterectomy, Plaintiff received communication from his supervisor, Christie Launius (cisgender female), questioning the arrangements referenced in paragraph 17, prompting Plaintiff to provide additional medical documentation, and pressuring Plaintiff to return to work earlier than the recommended six to eight weeks.

19.     Because of the pressure Plaintiff experienced from Ms. Launius, Plaintiff returned to work at the University only two weeks following the hysterectomy and worked to the best of his ability through the conclusion of the Spring 2022 semester.

20.     Following the Spring 2022 semester, Plaintiff took sabbatical through the Fall 2022 semester.

21.     Plaintiff returned to work for the University at the beginning of the Spring 2023 semester. Upon Plaintiff's return to work, Plaintiff learned that several of Plaintiff's co-workers and peers that did not identify as transgender or transsexual were given far more leniency and cooperation by Ms. Launius for medical and/or similar leave as requested by Plaintiff referenced in paragraphs 16-19.

22.     After learning about the differential treatment referenced in paragraph 21, Plaintiff raised concerns about said differential treatment during a January 2023 department faculty meeting and again during a March 6, 2023 department faculty meeting.

23.     On or about March 23, 2023, Plaintiff filed a complaint with the University's Office of Institutional Equity (hereinafter "OIE") against Ms. Launius for differential treatment resulting from Plaintiff's identification as a transgender and/or transsexual individual.

24.     Soon after Plaintiff's March 23, 2023 complaint, Plaintiff noticed that Ms. Launius' demeanor negatively changed toward Plaintiff and that Ms. Launius refused to acknowledge Plaintiff in passing.

25.     On or about April 17, 2023, the University held a meeting to address "tensions" within the department. During this meeting, one of Plaintiff's co-workers, Susan Rensing (cisgender female), became outwardly emotional and aggressive toward Plaintiff, stated to Plaintiff that she was "ashamed" of Plaintiff, and that Plaintiff should be "ashamed" of himself in reference to the fact that Plaintiff had filed the March 23, 2023 complaint.

26.     On or about June 9, 2023, Plaintiff filed a second complaint with the University's OIE concerning the increasingly hostile behavior from Ms. Launius and Ms. Rensing following Plaintiff's March 23, 2023 complaint and the April 17, 2023 meeting. Plaintiff received minimal correspondence concerning this complaint before receiving notice on August 29, 2023 that the matter was being closed. To Plaintiff's knowledge, no other action was taken by the University in response to Plaintiff's June 9, 2023 complaint.

27.     On June 13, 2023 Ms. Launius was named the interim department head. Plaintiff raised objections and concerns that the department had not been consulted or properly involved in the appointment of Ms. Launius to the department head position, as is standard University practice.

28.     At the start of the Fall 2023 semester, Plaintiff became subject to the supervision of Scott Tanona (cisgender male). In approximately August 2023, Mr. Tanona informed Plaintiff that Plaintiff would no longer be permitted to speak "off agenda" at department faculty meetings. No other faculty members had been given this directive. During the Fall 2023 semester, when Plaintiff attempted to submit items to the department faculty meeting agenda for discussion, Plaintiff's submissions were denied by Ms. Launius.

29.     During an October 2023 meeting, Plaintiff stated the word "orgasm" during a faculty meeting of the Gender, Women, and Sexuality Studies department. Several faculty members, including Plaintiff, have conducted research in sex education and use of the term "orgasm" is common. Nonetheless, Ms. Rensing submitted an OIE complaint against Plaintiff allegedly for use of this term in late October/early November 2023.

30.     On or about October 23, 2023, Plaintiff learned that Ms. Launius and Ms. Rensing had removed Plaintiff from his position on the University's Queer Studies Committee without Plaintiff's consent and/or input. Plaintiff's removal from this committee would ultimately influence Plaintiff's ability to obtain full professorship and other merit-based accomplishments. Plaintiff made Mr. Tanona aware of Plaintiff's involuntary removal from this committee by Ms. Launius and Ms. Rensing.

31.     In approximately May 2024, Plaintiff inquired to the University as to what materials he would need to submit to apply for full or tenure-track professorship. In response, Plaintiff learned that the Spring 2024 deadline had passed for Plaintiff to make such submission, and that Ms. Launius had not informed Plaintiff of this deadline.

32.     Over the 2024 summer, both Ms. Launius and Ms. Rensing were voluntarily transferred to other departments within the University. Prior to this transfer, Ms. Launius and Ms. Rensing were increasingly hostile, standoffish, and dismissive toward Plaintiff.

33.     Defendant is a qualified covered entity under Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination, as Defendant is an arm of a governmental entity that engages in commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

34.     Plaintiff was subjected to discrimination on the basis of Plaintiff's sex and/or transsexuality by Plaintiff's superior(s) and peers, which Defendant took no meaningful action to correct, cease, or otherwise address.

35.     Plaintiff was subjected to acts of retaliation for engaging in protected activity, which Defendant took no meaningful action to correct, cease, or otherwise address.

36.     Defendant took no action to intervene or prevent the harassment, discrimination, and retaliation taking place at Defendant's workplace based on sex.

## COUNT I – DISPARATE TREATMENT AND HARASSMENT ON THE BASIS OF SEX RESULTING IN A HOSTILE WORK ENVIRONMENT CONSTITUTING DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE KANSAS ACT AGAINST DISCRIMINATION

37.     Plaintiff incorporates by reference all aforementioned paragraphs 1 through 36 as if fully set forth herein.

38.     Plaintiff was subject to discrimination on the basis of sex by his superior(s) that was severe or pervasive enough to alter the conditions of Plaintiff's employment and created an abusive working environment.

39.     Plaintiff experienced discrimination on the basis of sex by his superior(s) when the superior(s) exhibited demeaning and dismissive behavior toward Plaintiff, both in private and in

front of Plaintiff's non-transgender and/or cisgender peers and/or in comparison to Plaintiff's non-transgender and/or cisgender peers.

40.    Plaintiff experienced discrimination on the basis of sex by his superior(s) when Plaintiff was treated differently and less favorably than Plaintiff's non-transgender and/or cisgender peers in that said peers were afforded more leniency and/or cooperation in relationship to leave similarly taken by Plaintiff.

41.    Plaintiff experienced discrimination on the basis of sex by his superior(s) when Plaintiff was subjected to Ms. Launius' negative change(s) in demeanor and refusal to acknowledge Plaintiff in passing.

42.    Plaintiff experienced discrimination on the basis of sex when Plaintiff's non-transgender and/or cisgender peer became outwardly emotional and aggressive toward Plaintiff, stated that she was "ashamed" of Plaintiff, and that Plaintiff should be "ashamed" of himself in reference to Plaintiff reporting the discriminatory behavior of his supervisor during a department faculty meeting.

43.    Plaintiff experienced discrimination on the basis of sex when the University generally ignored and abruptly dismissed Plaintiff's June 2023 OIE complaint of disparate treatment, harassment, and retaliation.

44.    Plaintiff experienced discrimination on the basis of sex when the University promoted Ms. Launius despite Plaintiff's complaints of sex discrimination and retaliation.

45.    Plaintiff experienced discrimination on the basis of sex when Plaintiff's superior(s) refused to allow Plaintiff to speak freely at department faculty meetings and refused to permit Plaintiff's items to be added to department faculty meetings while not making these same refusals to Plaintiff's cisgender similarly situated peers.

46.     Plaintiff experienced discrimination on the basis of sex when Plaintiff's cisgender peer submitted a baseless OIE complaint against Plaintiff for use of the term "orgasm" during a faculty meeting of the Gender, Women, and Sexuality Studies department.

47.     Plaintiff experienced discrimination on the basis of sex when Ms. Launius and Ms. Rensing involuntarily removed Plaintiff from his position on the University's Queer Studies Committee, negatively impacting Plaintiff's ability to obtain full professorship and other merit-based accomplishments.

48.     Plaintiff experienced discrimination on the basis of sex when the University took no meaningful action in response to the discriminatory acts of Ms. Launius and Ms. Rensing described in paragraph 47.

49.     Plaintiff experienced discrimination on the basis of sex when Ms. Launius did not make Plaintiff aware of certain deadlines necessary for Plaintiff to apply to full or tenure-track professorship.

50.     Plaintiff experienced discrimination on the basis of sex when the University took no meaningful action to correct or otherwise address Plaintiff's several complaints concerning discrimination and retaliation by Ms. Launius and Ms. Rensing.

51.     This treatment by Plaintiff's supervisor(s) was extremely unwelcome, made Plaintiff uncomfortable, was embarrassing, humiliating, was ongoing in nature between March 2022 and Summer 2024, and due to Plaintiff's status as a transgender individual.

52.     The discrimination described herein took place at Defendant's workplace during Plaintiff's designated worktimes while both Plaintiff and the superior(s) were under the control and direction of Defendant.

53.    Plaintiff complained to appropriate members of his supervision and the University's OIE representatives about the harassment and discrimination he was experiencing.

54.    The University had knowledge of the discrimination toward Plaintiff, as evidenced by Plaintiff's multiple complaints to the University referencing the behavior.

55.    The University failed to take any meaningful action to prevent or cease the discrimination by Plaintiff's superior(s) and negligently and recklessly failed to recognize and deal with the discrimination.

56.    Due to the University's failure to prohibit or otherwise prevent the sexual harassment and discrimination by Plaintiff's superior(s), Plaintiff was removed from a leadership position in 2023 and could not obtain full or tenured professorship in 2024.

57.    All of the actions by Defendant occurring prior to June 7, 2023 may be considered under the continuing and/or repeated course of conduct doctrines recognized by this Court, as the various acts constitute a continuing or repeated pattern of discrimination and at least one of the various acts of discrimination occurred subsequent to June 7, 2023.

58.    All of the actions by Defendant occurring subsequent to April 2, 2024 may be considered as actions reasonably expected to be included in the investigation of Plaintiff's complaints of discrimination and retaliation on the basis of sex.

59.    The University has failed to properly train their supervisors and human resources personnel concerning their duties and obligations under civil rights laws, including Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination.

60.    As a direct and proximate result of all of Defendant's discriminatory actions herein this case, Plaintiff has suffered and will continue to suffer emotional distress, humiliation, a deprivation

of income, damage to professional reputation, as well as other monetary and non-monetary damages.

61.    Plaintiff is entitled to attorney's fees as provided in Title VII of the Civil Rights Act of 1964 for the fees and costs in bringing this action.

WHEREFORE, Plaintiff prays the Court enter judgment in his favor against Defendant on Count I of Plaintiff's Complaint, finding that he was subject to ongoing disparate treatment and sexual harassment constituting a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination, for injunctive relief, for an award of back pay and benefits including interest, an award of front pay and benefits including interest, an award of compensatory damages, the costs of this action, reasonable attorneys' fees, and for other such relief as the Court deems just and equitable.

## COUNT II – RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE KANSAS ACT AGAINST DISCRIMINATION

62.    Plaintiff incorporates by reference all aforementioned paragraphs 1 through 61 above as if fully set forth herein.

63.    Plaintiff engaged in protected activity protected by Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination when Plaintiff raised concerns about differential treatment on the basis of Plaintiff identifying as transgender at a January 2023 department faculty meeting and a March 2023 department faculty meeting.

64.    Plaintiff engaged in protected activity protected by Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination when Plaintiff filed a complaint with the University's OIE in March 2023 against Ms. Launius for differential treatment resulting from Plaintiff's identification as a transgender and/or transsexual individual.

65.     Plaintiff engaged in protected activity protected by Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination when Plaintiff filed a complaint with the University's OIE against Ms. Launius and Ms. Rensing for their increasingly hostile behavior following Plaintiff's March 23, 2023 OIE complaint and the April 17, 2023 meeting.

66.     Plaintiff engaged in protected activity protected by Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination when Plaintiff objected to the June 13, 2023 appointment of Ms. Launius as interim department head.

67.     Plaintiff engaged in protected activity protected by Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination when Plaintiff drew attention to and complained about Ms. Launius and Ms. Rensing removing Plaintiff from his position on the University's Queer Studies Committee in October 2023.

68.     Subsequent to and as a result of Plaintiff engaging in protected activity, Plaintiff experienced retaliation when Ms. Launius' demeanor toward Plaintiff negatively changed and Ms. Launius refused to acknowledge Plaintiff in passing.

69.     Subsequent to and as a result of Plaintiff engaging in protected activity, Plaintiff experienced retaliation when Ms. Rensing became outwardly emotional and aggressive toward Plaintiff, stated to Plaintiff that she was "ashamed" of Plaintiff, and that Plaintiff should be "ashamed" of himself in reference to the fact that Plaintiff had filed the March 23, 2023 complaint.

70.     Subsequent to and as a result of Plaintiff engaging in protected activity, Plaintiff experienced retaliation when the University failed to take any meaningful action in response to Plaintiff's June 8, 2023 OIE complaint.

71.     Subsequent to and as a result of Plaintiff engaging in protected activity, Plaintiff experienced retaliation when the University named Ms. Launius the interim department head not in accordance with the University's standard practice.

72.     Subsequent to and as a result of Plaintiff engaging in protected activity, Plaintiff experienced retaliation when Mr. Tanona instructed Plaintiff not to speak "off agenda" at department faculty meetings and refused to permit Plaintiff's submissions to the department faculty meeting agenda.

73.     Subsequent to and as a result of Plaintiff engaging in protected activity, Plaintiff experienced retaliation when Ms. Rensing filed a baseless OIE complaint against Plaintiff in late October/early November 2023.

74.     Subsequent to and as a result of Plaintiff engaging in protected activity, Plaintiff experienced retaliation when Ms. Launius and Ms. Rensing involuntarily removed Plaintiff from his position on the University's Queer Studes Committee.

75.     Subsequent to and as a result of Plaintiff engaging in protected activity, Plaintiff experienced retaliation when Defendant refused to take any action in response to Plaintiff's complaints concerning be removed from his position on the  University's Queer Studes Committee.

76.     Subsequent to and as a result of Plaintiff engaging in protected activity, Plaintiff experienced retaliation when Ms. Launius failed to inform Plaintiff about a deadline for Plaintiff to submit materials necessary to apply for full or tenure-track professorship.

77.     All of the actions by Defendant occurring prior to June 7, 2023 may be considered under the continuing and/or repeated course of conduct doctrines recognized by this Court, as the various

acts constitute a continuing or repeated pattern of discrimination and at least one of the various acts of discrimination occurred subsequent to June 7, 2023.

78.    All of the actions by Defendant occurring subsequent to April 2, 2024 may be considered as actions reasonably expected to be included in the investigation of Plaintiff's complaints of discrimination and retaliation on the basis of sex.

79.    The retaliation by Plaintiff's superior(s) took place at Defendant's workplace during Plaintiff's designated worktimes while both Plaintiff and the superior(s) were under the control and direction of Defendant.

80.    Defendant did not take Plaintiff's complaints in good faith, and instead retaliated against such complaints, discriminated against Plaintiff on the basis of sex, including refusal to intervene or otherwise address the ongoing retaliation.

81.    Defendant herein this case failed to take reasonable steps to protect Plaintiff from retaliation.

82.    Defendant herein failed to properly train its supervisors and human resources personnel concerning their duties and obligations under civil rights laws, including Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination.

83.    As a direct and proximate result of Defendant's actions and retaliation herein, Plaintiff has suffered and will continue to suffer emotional distress, humiliation, a deprivation of income, damage to professional reputation, as well as other monetary and non-monetary damages.

84.    Plaintiff is entitled to attorney's fees for this retaliation, requiring the bringing of this claim as provided in Title VII of the Civil Rights Act of 1964 and for the fees and costs incurred in bringing this action.

WHEREFORE, Plaintiff prays the Court enter judgment in his favor against Defendant on Count II of his Complaint, finding that Plaintiff was retaliated against for opposing discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination, for an award of back pay and benefits including interest, an award of front pay and benefits including interest, an award of compensatory and punitive damages, the costs of this action, reasonable attorney's fees, and for other such relief as the Court deems just and equitable.

## DAMAGES

85.    Plaintiff incorporates by reference all aforementioned paragraphs 1 through 84 above as if full set forth herein.

86.    Plaintiff prays for compensatory damages in the amount of $300,000.00, as Defendant employs upwards of 500 employees.

87.    Plaintiff prays for injunctive relief in the form of reinstatement with backpay including benefits and interest incurred.

88.    Plaintiff alternatively prays for injunctive relief in the form of backpay including benefits with interest incurred, and front pay including benefits with interest incurred, in place of reinstatement.

89.    Plaintiff prays for damages in the amount of reasonable attorney's fees and costs associated with bringing this action pursuant to Title VII of the Civil Rights Act of 1964.

90.    Plaintiff prays for any other damages and relief as this Court may deem necessary, just, and equitable as allowed by Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination or any other relevant source of law related to these claims or within the power of the Court.

WHEREFORE, Plaintiff prays the Court enter judgment in his favor against Defendant on all Counts of his Complaint, finding that Plaintiff was subjected to discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination. Plaintiff prays for an award of injunctive relief, compensatory damages in the amount of $300,000.00, an award of back pay and benefits including interest, an award of front pay and benefits including interest, an award of reasonable attorney's fees, an award of the costs of this action, and for other such relief as the Court deems just and equitable.

Respectfully submitted,

*/s/Bruce Alan Brumley*
*/s/Chloe Elizabeth Davis*
Bruce Alan Brumley, #16066
Chloe Elizabeth Davis, #28517
Brumley Law Office
2348 SW Topeka Blvd., #201
Topeka, KS 66611
P: (785) 267-3367 / F: (785) 233-3161
chloe@brucebrumleylaw.com
bruce@brucebrumleylaw.com

## <u>DEMAND FOR JURY TRIAL</u>

COMES NOW, the Plaintiff, and pursuant to Federal Rule 38(b)(1), demands a trial by jury on all of these issues in the above-captioned case.

*/s/Bruce Alan Brumley*
*/s/Chloe Elizabeth Davis*
Bruce Alan Brumley, #16066
Chloe Elizabeth Davis, #28517
Brumley Law Office
2348 SW Topeka Blvd., #201
Topeka, KS 66611
P: (785) 267-3367 / F: (785) 233-3161
chloe@brucebrumleylaw.com
bruce@brucebrumleylaw.com

16