IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**HARLAN EUGENE WEAVER,**

                **Plaintiff**,

v.

**KANSAS STATE UNIVERSITY,**

                **Defendant.**

Case No. 25-4043-DDC-BGS

**MEMORANDUM AND ORDER**

    Plaintiff Harlan Eugene Weaver alleges that defendant Kansas State University discriminated against him based on sex and retaliated against him after he filed internal complaints. Before the court is defendant's Motion to Dismiss (Doc. 9). Defendant argues that plaintiff failed to exhaust administrative remedies and that he hasn't alleged a retaliation claim adequately. Plaintiff responded (Doc. 16), and defendant replied (Doc. 17). This Order grants in part and denies in part defendant's Motion to Dismiss (Doc. 9). The court explains this result, below, starting with a description of plaintiff's allegations.

**I.    Background**

    The following facts come from plaintiff's Complaint (Doc. 1). The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to Plaintiff[], and draw[s] all reasonable inferences from the facts in favor of Plaintiff[]." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

Plaintiff is a transgender man, identifying and presenting as male. Doc. 1 at 2 (Compl. ¶ 14). Defendant hired plaintiff as an Associate Professor in its Gender, Women, and Sexuality Studies Department in August 2015. *Id.* at 3 (Compl. ¶ 15).

Plaintiff had scheduled a hysterectomy in March 2022. *Id.* (Compl. ¶ 16). This surgery required a recovery period lasting six to eight weeks. *Id.* Plaintiff arranged with defendant to take this time off. *Id.* (Compl. ¶ 17). After the surgery, plaintiff's supervisor, Christie Launius, contacted him, questioning the arrangements that he had made and pressuring him to return to work. *Id.* (Compl. ¶ 18). Plaintiff succumbed to this pressure, returning to work just two weeks after surgery. *Id.* (Compl. ¶ 19). He worked the rest of the Spring 2022 semester and then took sabbatical through the Fall 2022 semester. *Id.* (Compl. ¶¶ 19–20).

When plaintiff returned to work in the Spring 2023 semester, he learned that Launius had extended greater leniency for medical leave to employees who aren't transgender. *Id.* (Compl. ¶ 21). So, plaintiff raised concerns about this differential treatment at a departmental faculty meeting in January 2023 and again in March 2023. *Id.* at 4 (Compl. ¶ 22). He also filed a complaint against Launius with defendant's Office of Institutional Equity based on this differential treatment. *Id.* (Compl. ¶ 23). Soon after, plaintiff noticed that Launius started to give him the cold shoulder, refusing to acknowledge him in passing. *Id.* (Compl. ¶ 24). Defendant hosted a meeting in April 2023 to address tensions within the department. *Id.* (Compl. ¶ 25). There, one of plaintiff's co-workers, Susan Rensing, emotionally and aggressively told plaintiff that she was ashamed of him for filing an internal complaint. *Id.* Plaintiff then filed a second complaint with the Office of Institutional Equity, citing the hostile behavior displayed by Launius and Rensing. *Id.* (Compl. ¶ 26).

Defendant promoted Launius to department head and assigned plaintiff a new supervisor, Scott Tanona. *Id.* at 4–5 (Compl. ¶¶ 27–28). Tanona prohibited plaintiff from speaking about items "off agenda" at department meetings. *Id.* at 5 (Compl. ¶ 28). And when plaintiff tried to submit items for discussion at the faculty meeting, Launius denied those requests. *Id.* Later, during the Fall 2023 semester, Rensing filed a complaint against plaintiff with the Office of Institutional Equity after plaintiff said the word "orgasm" during a department meeting. *Id.* (Compl. ¶ 29). Around this same time, plaintiff learned that Launius and Rensing had removed him from the defendant's Queer Studies Committee. *Id.* (Compl. ¶ 30). This removal harmed plaintiff's ability to achieve full professorship and his access to other merit-based achievements. *Id.*

In May 2024, plaintiff asked defendant what materials he needed to submit to apply for full or tenure-track professorship. *Id.* (Compl. ¶ 31). But plaintiff then learned that the Spring 2024 deadline already had passed and that Launius hadn't informed plaintiff of the deadline. *Id.*

The Complaint asserts two counts. The first claims disparate treatment and harassment on the basis of sex resulting in a hostile work environment. *Id.* at 6–10 (Compl. ¶¶ 37–61). The second asserts a claim for retaliation for engaging in protected activity. *Id.* at 10–14 (Compl. ¶¶ 62–84). Plaintiff asserts both claims under Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination (KAAD).

## II.     Legal Standard

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

3

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it's "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**III.      Analysis**

Defendant asks the court to dismiss this case because, as defendant tells it, plaintiff hasn't complied with various procedural requirements. Defendant presents two flavors of procedural arguments: one based on failure to comply with the Kansas Judicial Review Act (KJRA) and another based on failure to file timely comprehensive charges with the EEOC and Kansas Human Rights Commission (KHRC). Defendant also argues that plaintiff hasn't alleged a cognizable retaliation claim. This Order tackles these arguments, in turn, starting with defendant's KJRA argument.

4

### A. Kansas Judicial Review Act

Defendant first argues that plaintiff didn't comply with the KJRA, and that his failure to do so requires dismissal. Doc. 10 at 5–9. The KJRA imposes procedural requirements—including exhaustion and timely filing in a Kansas state court—to review state agency actions.[1] Defendant contends that plaintiff didn't abide these procedural requirements because—even though he filed a claim with the EEOC and KHRC—he didn't exhaust administrative remedies within defendant's Office of Institutional Equity. *See* Kan. Stat. Ann. § 77-612 (requiring exhaustion both "within the agency whose action is being challenged and within any other agency authorized to exercise administrative review"). Defendant thus argues that the court should dismiss the whole Complaint—including plaintiff's Title VII claims. Plaintiff, for his part, argues that state law can't impose additional hurdles for his federal Title VII claims. And he argues that a provision of the KJRA exempts his KAAD claims from the exhaustion requirement. The court takes these responses, in turn.

#### 1. Title VII Claims

Kansas lacks power to add requirements for a plaintiff to bring a federal claim in federal court. Defendant's argument—that Kansas law may add procedural barriers to bring a Title VII claim—is a nonstarter. The Supreme Court and our Circuit have rejected similar efforts to layer state procedural hoops onto procedural requirements supplied by federal law for federal claims. Under the Supremacy Clause, federal law preempts these state laws.

---

[1] State educational institutions are state agencies for KJRA purposes. *Gaskill v. Fort Hays State Univ.*, 70 P.3d 693, 695 (Kan. Ct. App. 2003).

In *Felder v. Casey*, the Supreme Court explained that federal law preempts state notice-of-claim provisions for § 1983 claims. 487 U.S. 131, 140 (1988). The Court explained that states may not "place conditions on the vindication of a federal right." *Id.* at 147; *id.* at 144 ("States . . . may no more condition the federal right to recover for violations of civil rights than bar that right altogether[.]"). *Felder* explained its holding this way:

> A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law. Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right[.]

*Id.* at 153. *Felder* forecloses defendant's argument. State laws imposing substantive hurdles are "entirely irrelevant insofar as the assertion of the federal right is concerned[.]" *Id.* at 144.

Circuit precedent requires the same result. In *Childers v. Independent School District No. 1*, our Circuit held that the Oklahoma Political Subdivision Tort Claims Act doesn't apply to § 1983 claims. 676 F.2d 1338, 1342–43 (10th Cir. 1982). This Oklahoma law established a procedural framework requiring a claimant to exhaust specified administrative remedies and file suit within six months. *Id.* *Childers* held that these procedural hurdles were "inconsistent with the broad remedial purposes of the federal civil rights acts." *Id.* at 1343. As it explained, "a plaintiff seeking in federal court to vindicate a federally created right cannot be made to jump through the procedural hoops for tort-type cases that may have commended themselves to the legislative assemblies of the several states." *Id.* (quotation cleaned up). *Childers* undermines defendant's argument, too. Put simply, states can't impose procedural regimes that add additional exhaustion requirements for federal claims.

Other federal courts consistently reach the same result, rejecting defendants' efforts to escape federal liability by hiding behind state procedures and immunities. *See, e.g.*, *Richards v.*

6

*County of Los Angeles*, No. CV 17–400 BRO (AGRx), 2017 WL 7411159, at *3 (C.D. Cal. Mar. 31, 2017) (explaining that defendant couldn't "shield himself from Plaintiff's federal RICO claims with California immunities or procedural requirements" because the "Supremacy Clause . . . grants Congress the Power to create federal causes of action, and states cannot place immunities or procedural requirements in the way of litigants seeking to assert a federally created claim"); *Crook v. Ryan*, No. CV-15-02610-PHX-JAT (ESW), 2017 WL 744423, at *2 (D. Ariz. Feb. 27, 2017) ("For purposes of a federal civil rights claim under 42 U.S.C. § 1983, the Arizona legislature may not impose additional procedural requirements on litigants." (quotation cleaned up)); *Muffett v. City of Yakima*, No. CV-10-3092-RMP, 2011 WL 5417158, at *4 (E.D. Wash. Nov. 9, 2011) ("In light of the supremacy of federal law, a state cannot modify § 1983 and impose an exhaustion requirement."). In fact, the Kansas Supreme Court also has assumed that the KJRA doesn't apply to federal claims. *See Schall v. Wichita State Univ.*, 7 P.3d 1144, 1162 (Kan. 2000) ("The provisions of the KJRA . . . do not affect either the ADA or FMLA claims.").

In short, the court rejects defendant's argument. The KJRA doesn't impose additional hurdles for a claimant to bring a Title VII claim in federal court. Plaintiff's failure to exhaust under the KJRA thus doesn't require dismissal of his Title VII claims.[2]

---

[2] Defendant also offers, halfheartedly, an argument that the court should abstain under *Younger*. Doc. 17 at 2. Defendant has waived this argument with its perfunctory presentation. *See United States v. Moya*, 5 F.4th 1168, 1192 (10th Cir. 2021) (explaining that litigants waive arguments "when they are inadequately presented" (quotation cleaned up)). Regardless, it's not clear how this case fits within any of the *Sprint* categories for *Younger*. *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (explaining that *Younger* abstention applies "*only when* the state proceeding falls into one of the following categories: (1) state criminal prosecutions, (2) civil enforcement proceedings that take on a quasi-criminal shape, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function" (emphasis in original) (quotation cleaned up)).

The court applies defendant's exhaustion argument to plaintiff's KAAD claims, next.

### 2. KAAD Claims

The court also declines to dismiss plaintiff's KAAD claims because of KJRA requirements. The KJRA applies to any "agency action." Kan. Stat. Ann. § 77-603(a). And the Act offers a sweeping definition of "agency action," which includes "an agency's performance of, or failure to perform, any other duty, function, or activity, discretionary or otherwise." *Id.* § 77-602(b)(3). Defendant seizes on this broad definition and asserts that its alleged statutory violations constitute "agency actions" under the KJRA. Doc. 10 at 5–9. This argument ignores a developed body of Kansas case law suggesting that defendant is wrong.[3]

Despite the sweeping statutory definition of "agency action," the Kansas Supreme Court has narrowed the scope of this term. Specifically, in a line of cases, the Kansas Supreme Court has held that the KJRA doesn't extend to tort claims against a state agency. *E.g.*, *Platt v. Kansas State Univ.*, 379 P.3d 362, 368 (Kan. 2016) ("The general conclusion that torts are outside the purview of the KJRA has been repeatedly confirmed in Kansas caselaw since . . . 1994."); *Hill v. State*, 448 P.3d 457, 499 (Kan. 2019) (explaining the "general rule that torts committed by a state agency fall outside the KJRA's purview"). And the Kansas Supreme Court has extended this holding to the tort of retaliatory discharge. *Platt*, 379 P.3d at 372; *Hill*, 448 P.3d at 465. The Kansas Supreme Court reasoned that the KJRA shouldn't apply when the agency "could not

---

[3] Neither party cites or discusses any case law analyzing the breadth of the KJRA. Plaintiff argues that a provision in the KAAD doesn't require KJRA exhaustion for KHRC determinations finding "no probable cause." Doc. 16 at 6–7. This argument misses the point. The KJRA requires exhaustion both "within the agency whose action is being challenged and within any other agency authorized to exercise administrative review[.]" Kan. Stat. Ann. § 77-612. The statute plaintiff cites provides that a plaintiff needn't further exhaust remedies *within* the KHRC after receiving a no-probable-cause determination. Kan. Stat. Ann. § 44-1044; *id.* § 44-1011(b)(1). But this provision says nothing about exhausting remedies in an agency separate from the KHRC. In other words, the provision plaintiff has cited excuses the requirement for further exhaustion within the KHRC. But it doesn't say that plaintiff needn't exhaust defendant's internal administrative remedies.

administratively address" the plaintiff's claims—which is typically true for tort claims. *Platt*, 379 P.3d at 367 (quotation cleaned up); *see also Friedman v. Kan. State Bd. of Healing Arts*, 199 P.3d 781, 755 (Kan. 2009) (explaining that litigants may bring a claim outside the KJRA when the claim falls outside the authority of the agency).

Kansas courts haven't confronted the question whether plaintiff's KAAD claims fall within the KJRA. It's something of a close call. And one that the court can't make from the current briefing and record. On one hand, KAAD claims for unlawful discrimination and retaliation are, in many ways, similar to claims asserting the tort of retaliatory discharge. And the Kansas Supreme Court has held—twice—that claims for retaliatory discharge aren't subject to the KJRA. Plus, like tort claims, KAAD claims allege "wrongful acts" which fall outside the KJRA's purview. *Heiland v. Dunnick*, 19 P.3d 103, 108 (Kan. 2001). On the other hand, defendant's internal procedures explain that it has authority to grant some of the relief that plaintiff's claim seeks, such as reinstatement and back pay.[4]

Given defendant's failure to situate its KJRA argument within a robust body of case law, the court concludes that defendant—the movant—has failed to carry its burden to show that it's entitled to the relief it seeks. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) ("[E]very circuit court to address this issue—this Court included—has interpreted Rule 12(b)(6) as requiring the movant to show entitlement to dismissal."); 5B *Wright & Miller's Federal Practice & Procedure* § 1357 (4th ed. 2025) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists."). Alternatively, the court considers the argument

---

[4] *See* Kansas State University, *Policy Prohibiting Discrimination, Harassment, and Sexual Harassment, and Procedure for Reviewing Complaints*, Chapter 3010 § E, https://www.k-state.edu/policies/ppm/3000/3010.html (last visited Feb. 5, 2026).

inadequately briefed and thus waived. *See Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019) (explaining that courts "may decline to consider arguments that are . . . inadequately presented" (quotation cleaned up)). The court thus denies, but without prejudice, defendant's argument that plaintiff's KAAD claims fail because he didn't comply with the KJRA.[5] Defendant may raise this argument again in future proceedings. Should defendant raise this issue again, it should (1) address the Kansas Supreme Court case law cited above; and (2) discuss whether defendant's internal procedures permit it to grant plaintiff the relief he seeks on this claim.

The exhaustion fun isn't over quite yet. Defendant also has argued that plaintiff inadequately exhausted his claims within the EEOC and KHRC. The court turns next to these arguments.

### B. Exhaustion

Defendant argues that plaintiff hasn't exhausted his claims under Title VII and the KAAD because (1) he's alleged incidents that occurred more than 300 days before he filed his charge with the EEOC and KHRC, and (2) he's included allegations in his Complaint that he didn't list in the charge he filed with the EEOC and KHRC.

#### 1. Timeliness

Defendant first contends that some of plaintiff's allegations occurred more than 300 days before he filed his Charge of Discrimination, and thus those claims aren't timely. "In states with

---

[5] Potentially, two distinct exhaustion doctrines are at issue. Defendant has made a fulsome argument that the KJRA's exhaustion requirement bars plaintiff's claims. And, as the court has explained, it's not clear on this record that the KJRA applies to plaintiff's Complaint at all. But there's also a common-law exhaustion requirement. One case defendant cites relies on this principle, not the KJRA. *See Mattox v. Dep't of Transp.*, 747 P.2d 174 (Kan. Ct. App. 1987). Defendant hasn't made more than a perfunctory argument about common-law exhaustion. So, the court won't grant relief based on it. *See Moya*, 5 F.4th at 1192. Again, defendant may raise this argument in future proceedings.

a state agency that has authority over employment discrimination claims, including Kansas, employees have up to 300 days to file an EEOC charge if they first file a charge with the state agency." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012) (citing 42 U.S.C. § 2000e-5(e)(1)), *abrogated on other grounds by Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).[6]  "A claim not filed within these statutory limits is time barred." *Id.*  Ordinarily, applying this "limitations period is straightforward: 'A discrete retaliatory or discriminatory act occurred on the day that it happened.'" *Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016) (quotation cleaned up) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)).  But hostile work environment claims are different.  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)).  Consequently, under the continuing violation doctrine,

> it does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.*

Plaintiff filed his Charge on April 2, 2024.  Doc. 16 at 16–20.[7]  This filing date means that plaintiff's claims are timely for allegations occurring on or after June 7, 2023.  Some of

---

[6] The KAAD imposes a more stringent time requirement.  "Any complaint filed pursuant to this act must be so filed within six months after the alleged act of discrimination, unless the act complained of constitutes a continuing pattern or practice of discrimination in which event it will be from the last act of discrimination." Kan. Stat. Ann. § 44-1005(i).

[7] Plaintiff attached his Charge of Discrimination, which he dual-filed with the EEOC and KHRC, to his response brief.  Doc. 16 at 16–20.  The court properly may consider this document.  The Complaint references it; it's central to plaintiff's Complaint because exhaustion is mandatory for plaintiff's claims; and no party disputes its authenticity.  *See Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1150 n.11 (10th Cir. 2023) (explaining that district courts may consider "'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents'

11

plaintiff's allegations land outside this 300-day window. Specifically, plaintiff alleges that Launius pressured him early in Spring 2022 to return to work. Doc. 1 at 3 (Compl. ¶ 19). Plaintiff also alleges that he filed a complaint with defendant's Office of Institutional Equity in March 2023 and that defendant refused to investigate that complaint or take corrective action. *Id.* at 4, 8 (Compl. ¶¶ 23, 50). Similarly, plaintiff alleges that Rensing was aggressive and emotional toward him in April 2023. *Id.* at 4 (Compl. ¶ 25).

Plaintiff argues that he can use untimely claims as background evidence for his timely claims. The court agrees. Plaintiff can use these "prior acts as background evidence in support of [his] timely claim[s]." *Morgan*, 536 U.S. at 113. But he may not assert a disparate treatment or retaliation claim based on these untimely events—they are untimely.

Plaintiff next argues that he can use these untimely claims to support his hostile-work-environment claim under the continuing violation doctrine. Doc. 16 at 8–9.[8] Our Circuit has identified several factors courts use to decide whether offending acts "were part of the same actionable hostile work environment practice" so that the continuing violation doctrine applies. *Hansen*, 844 F.3d at 923. These non-exhaustive factors include "whether the pre- and post-limitations period acts were related by type, frequency, and perpetrator," and whether the acts occurred in the same location. *Id.* (quotation cleaned up). On the other hand, where there's "no

---

authenticity'" (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010))); *Hackemann-Bahlmann v. Kan. State Univ.*, No. 24-CV-04098-JAR-GEB, 2025 WL 1784930, at *2 (D. Kan. June 27, 2025) (considering Charge of Discrimination attached to plaintiff's response brief when deciding motion to dismiss).

[8]   The Supreme Court has limited this doctrine to hostile-work-environment claims. *Daniels*, 701 F.3d at 632 (explaining that the Supreme Court has limited the continuing violation doctrine to hostile-work-environment claims). That is, plaintiff may not wield the continuing violation doctrine to assert untimely claims in support of his disparate treatment or retaliation claims.

relation between the pre- and post-limitations acts," an employer won't incur liability. *Id.* (quotation cleaned up).

Plaintiff hasn't even tried to explain the relationship between his pre- and post-limitations allegations. *See* Doc. 16 at 8–9. Although plaintiff explains some of the law governing the continuing violation doctrine, he never explains why his pre- and post-limitations allegations here form one unlawful act. The court declines to do plaintiff's work for him. Based on his perfunctory briefing, the court considers the issue waived. And even on a motion to dismiss, it's plaintiff's burden to prove that the continuing violation doctrine applies. *Schell v. Chief Justice & Justices of Okla. Supreme Ct.*, 11 F.4th 1178, 1191 n.6 (10th Cir. 2021) (explaining that, on a motion to dismiss, "the burden was on [plaintiff] to raise an argument under that doctrine and show similar violations occurred both before and within the statute-of-limitations period"). Failing to proffer any explanation for the connection between his pre- and post-limitations actions, plaintiff utterly has failed to shoulder his burden. The court thus dismisses plaintiff's claims to the extent they rely on pre-June 7, 2023, allegations.

### 2. Unexhausted Claims

Defendant next argues that plaintiff hasn't exhausted his claims based on (1) Tanona telling him to not speak "off agenda"; (2) Launius failing to tell plaintiff about the deadline to apply for full or tenure-track professorship; and (3) requests for back pay and front pay. Doc. 10 at 13–14. Defendant explains that, though plaintiff alleged these incidents in his Complaint, he failed to allege them in his Charge of Discrimination.

"A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) (quotation cleaned

up). Courts liberally construe EEOC charges. *Smith v. Cheyenne Retirement Invs.*, 904 F.3d 1159, 1166 (10th Cir. 2018). Still, "a plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Sanderson*, 976 F.3d at 1170 (quotation cleaned up). The same standards govern exhaustion under the KAAD. *Hackemann-Bahlmann*, 2025 WL 1784930, at *4.

Reviewing plaintiff's Charge, the court agrees with defendant, in part. Plaintiff's Charge alleges just two forms of discrimination and retaliation. *First*, it asserts that defendant pressured plaintiff to cut his medical leave short. Doc. 16 at 18–19 (Charge §§ III–VII). And *second*, it alleges that defendant removed plaintiff from his position on the Queer Studies Committee. *Id.* at 19 (Charge § IX). Plaintiff's charge never alleged that Tanona told him not to speak "off agenda" at department meetings. *See id.* at 16–20. Nor did he allege that Launius failed to inform him about the deadline to apply for a promotion. *See id.* Plus, an administrative investigation into plaintiff's charge couldn't "reasonably be expected" to uncover plaintiff's allegations about Tanona's admonishment or Launius's failure to advise. *Sanderson*, 976 F.3d at 1170 (quotation cleaned up). Plaintiff thus failed to exhaust his claims based on Tanona's prohibition on speaking "off agenda" and Launius's failure to inform plaintiff about the tenure application deadline. The court thus dismisses these claims without prejudice.

Plaintiff argues that defendant didn't cite the charge when it made its argument. Doc. 16 at 10. That's true. But it's irrelevant. Plaintiff attached the charge to his response, *id.* at 16–20, and, as the court already has explained, it properly may review it.

Plaintiff next argues that his charge alleged continued "unlawful behavior" and retaliation from his superiors. *Id.* at 10. Plaintiff argues that it is thus "clear" that all his claims were within

the scope of his Charge. *Id.* The court disagrees. The charge's conclusory allegations that the "unlawful behavior of [plaintiff's] superiors continues to date" and that defendant engaged in "act[s] of discrimination and retaliation" don't suffice to exhaust his other allegations. *Id.* at 19 (Charge §§ X, XIII). These generic allegations wouldn't "reasonably" trigger an "administrative investigation" into plaintiff's allegations that Tanona told him he couldn't speak "off agenda" and that Launius didn't inform him about the deadline to apply for tenure. *Sanderson*, 976 F.3d at 1170 (quotation cleaned up); *see also Smith*, 904 F.3d at 1164 (explaining that the EEOC charge "must contain *facts* concerning the discriminatory and retaliatory actions underlying each claim" (emphasis added) (quotation cleaned up)).

But the court disagrees with two facets of defendant's position. *One*, defendant asserts that plaintiff didn't exhaust his demand for back pay. Doc. 10 at 13–14. Defendant cites no authority for the proposition that plaintiff must exhaust his request for remedies.[9] Regardless, the Charge requests "wage loss[.]" Doc. 16 at 19 (Charge § XV). *Two*, defendant expands the scope of its argument in its reply brief and asks the court to dismiss claims based on plaintiff's removal from the Queer Studies Committee and Rensing filing a baseless complaint against him. Doc. 17 at 4. Defendant's opening brief didn't ask the court to dismiss claims based on these allegations. *See* Doc. 10 at 13–14. So, the court declines to grant relief to defendant's arguments raised for the first time in its reply brief. *See United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) (explaining that courts ordinarily refuse to "consider arguments made for the first time" in a reply brief and "deem those arguments waived").

---

[9] The case law defendant cites suggests that a plaintiff must exhaust an allegation of disparate pay. But, as far as the court understands it, the Complaint doesn't allege that defendant discriminated against plaintiff by paying him too little. Instead, plaintiff alleges that defendant discriminated against him by undercutting his ability to become a full professor, and argues that he's entitled to damages based on that discrimination.

15

This holding concludes, at long last, the court's analysis of exhaustion issues. The court now pivots to defendant's argument that plaintiff has failed to allege a cognizable retaliation claim.

### C.  Retaliation

Defendant argues that plaintiff has failed to allege that defendant took any materially adverse employment action against him. Defendant contends that this failure requires dismissal of his retaliation claims.

To make out a prima facie case for a Title VII retaliation claim, plaintiff "must show . . . '(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)). "An employer action is materially adverse if 'it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 977 (10th Cir. 2025) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[P]etty slights, minor annoyances, and simple lack of good manners" don't qualify as materially adverse employment actions. *White*, 548 U.S. at 68. After all, these are the sort of "ordinary tribulations" that "often take place at work and that all employees experience." *Id.* (quotation cleaned up); *see also Somoza*, 513 F.3d at 1212 ("The Court [in *White*] focused on the term

16

'materially adverse' in order to separate trivial harms from actionable injuries because Title VII does not establish a general civility code for the American workplace." (quotation cleaned up)).

Plaintiff's response brief asserts—albeit in *ipse dixit* fashion—that the allegations in the Complaint would dissuade a reasonable person from bringing a charge of discrimination. Doc. 16 at 11. Plaintiff never cites any case law, and he never tries to argue *why* his allegations would rise to the materially adverse standard other than asserting that it's "clear" that they do. *Id.* And the court agrees with defendant: some of plaintiff's allegations don't qualify as materially adverse. Of plaintiff's surviving allegations, the following aren't materially adverse:

- the filing of a complaint against plaintiff, *Jones v. City of Chicago*, 673 F. Supp. 3d 926, 942 (N.D. Ill. 2023) (explaining that a coworker's "initiation of the complaint against [plaintiff] was not a materially adverse action" because it didn't "result in any tangible job consequence");
- failing to investigate plaintiff's internal complaints, *Daniels*, 701 F.3d at 640 (explaining that "a failure to investigate a complaint, unless it leads to demonstrable harm, leaves an employee no worse off than before the complaint was filed" and thus doesn't amount to a materially adverse employment action);

But the court reaches a different result for two of plaintiff's allegations. Plaintiff alleges that defendant removed him from the Queer Studies Committee. This plausibly qualifies as a materially adverse employment action. Defendant cites *Aquilino v. University of Kansas*, 268 F.3d 930 (10th Cir. 2001), for the proposition that removal from an academic committee isn't materially adverse employment action. Doc. 10 at 15. The court doesn't read *Aquilino* as broadly as defendant does.

There, our Circuit held that a professor's removal from a dissertation committee couldn't support her Title VII retaliation claim. *Aquilino*, 268 F.3d at 934. But the university there already had denied plaintiff tenure. *Id.* So, the Circuit concluded, this removal from a committee "had, at best, a de minimis effect on her future employment opportunities." *Id.* Here, in contrast, plaintiff alleges that defendant's decision to remove him from the academic

17

committee adversely affected his chances of achieving full professorship.  Doc. 1 at 5 (Compl. ¶ 30).  This allegation supports the reasonable inference that stripping plaintiff of committee assignments was a materially adverse employment action.  Other courts agree.

An allegation that removal from an academic committee undermined a plaintiff's chances of securing tenure is sufficient for a Title VII retaliation claim to survive a motion to dismiss.  *See Hamada v. State Univ. of N.Y. at Farmingdale*, No. 23-cv-6786 (NRM) (SIL), 2025 WL 916899, at *7 (E.D.N.Y. Mar. 25, 2025) (characterizing removal from academic committee as materially adverse employment action where plaintiff alleged that "such removal could significantly impair that employee's chances of tenure"); *Shafer v. Am. Univ. in Cairo*, No. 12–CV–9439 (VEC), 2014 WL 3767007, at *16 (S.D.N.Y. July 31, 2014) (similar).

The court also concludes that plaintiff's allegation that defendant promoted Launius after plaintiff had filed a complaint against her—at this early stage—plausibly could support his retaliation claim.  *Cf. Culp*, 133 F.4th at 978 ("Intentionally scheduling an employee to work with her harassing coworker could well be a materially adverse action in some circumstances.").  So, the court declines to dismiss that allegation, too.

In short, the court dismisses plaintiff's retaliation claims to the extent they rely on his assertion that Rensing filed a complaint against him, or that defendant failed to investigate his complaints.  Otherwise, his retaliation claims survive.[10]

---

[10]   The court denies plaintiff's passing request for leave to amend.  *See* Doc. 16 at 11–12.  Our Circuit has explained that a "district court may deny leave to amend when 'a plaintiff fails to file a written motion and instead merely suggests she should be allowed to amend if the court concludes her pleadings are infirm.'"  *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (quotation cleaned up) (quoting *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018)).  That's so because "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based."  *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014).

## IV.     Conclusion

The court declines to dismiss plaintiff's claims because he didn't comply with procedures set out in the KJRA.  But the court dismisses plaintiff's claims to the extent they rely on allegations occurring before June 7, 2023—300 days before plaintiff filed his Charge of Discrimination with the EEOC.  Plaintiff failed to exhaust allegations that Tanona told him not to speak "off agenda" at department meetings and that Launius failed to inform him about a deadline.  So, the court dismisses claims based on those allegations.  Finally, some of the purportedly adverse actions defendant took against plaintiff don't qualify as *materially* adverse.  But his allegation that defendant removed him from an academic committee that was important to his career advancement does qualify.  As does his allegation that defendant promoted Launius to a position with more supervisory power over him.  The court thus dismisses plaintiff's retaliation claims except to the extent that they rely on these two factual theories.[11]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Kansas State University's Motion to Dismiss (Doc. 9) is granted in part and denied in part, as set out in full in this Order.

**IT IS SO ORDERED.**

**Dated this 25th day of February, 2026, at Kansas City, Kansas.**

> s/ Daniel D. Crabtree
> **Daniel D. Crabtree**
> **United States District Judge**

---

[11]   This Order's dismissals are without prejudice.  *See Smith*, 904 F.3d at 1166 ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice." (emphasis in original) (quotation cleaned up)); *Seale v. Peacock*, 32 F.4th 1011, 1029 (10th Cir. 2022) (suggesting that dismissal with prejudice is appropriate only where claim's failure is "patently obvious").